# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

_____

UNITED STATES OF AMERICA,     )
)
    Plaintiff,    )
)
v.    )
)    **No. 09-2303-STA**
ELEVEN THOUSAND NINE HUNDRED    )
DOLLARS ($11,900.00) IN UNITED    )
STATES CURRENCY,    )
)
    Defendant.    )

_____

## ORDER GRANTING PLAINTIFF'S MOTION TO STRIKE
_____

Before the Court is Plaintiff's Motion to Strike Claimant's Claim and Answer (D.E. # 17) filed on July 8, 2009. This *in rem* forfeiture action was brought by the Plaintiff, the United States of America, which alleges that $11,900.00 in U.S. currency was used or intended to be used in exchange for controlled substances or represents proceeds of trafficking in controlled substances or was used or intended to be used to facilitate a violation of Title II of the Controlled Substances Act, 21 U.S.C. §§ 801 *et seq*. For the reasons set forth below, the motion is **GRANTED**.

### BACKGROUND

According to the Plaintiff, on or about December 12, 2008, the Federal Express (Fed Ex) Overgoods Department in Indianapolis, Indiana seized a suspicious Fed Ex box containing one Rolex watch, one David Yurman inlay dog tag necklace, one David Yurman chevron cross

necklace, one American Express gift card valued at $500.00, and $11,900.00 in U.S. currency.[1]

The package and its contents were then sent by Fed Ex security officers in Indianapolis to the

Fed Ex Armory in Memphis, Tennessee.[2]

On December 18, 2008, DEA Task Force Officers Bobby Hawks and David Boddie and

DEA Special Agent Charles Andrews went to the Fed Ex Armory and met with Fed Ex Security

Specialist Tim Houston, who provided them with the above information about the seized

package.[3]  The agent then took custody of the package and its contents.[4]  The jewelry was

subsequently forfeited to the United States in an administrative proceeding and is not a part of

the defendant property in this case.[5]  The American Express gift card was not accepted for

administrative forfeiture, was returned to its sender, Abiodun Akinpelade, and is also not a part

of the defendant property in this case.[6]

In addition, Houston advised the agents that on December 15, 2008, he had called Ayara

Olamigoke, the recipient listed on the Fed Ex shipping label at the telephone number provided,

(xxx) xxx-0954, regarding the package, and that a short time later on that same day, he had been

contacted by an individual identifying himself as "Ab Akins."[7]  Ayara told Houston that his

---

[1] Cotten Aff. ¶ 3.

[2] *Id*.

[3] *Id*. at ¶ 4.

[4] *Id*.

[5] *Id*.

[6] *Id*.

[7] *Id*. at ¶ 5.  From the record it appears that Ayara Olamigoke's name is actually
Olamigoke Ayara.  Therefore, for purposes of this Motion, the Court will treat any reference to

2

cousin had sent him the package and that it contained a Rolex watch and a cell phone.[8]  He made

no mention of any money.[9]  Ayara asked that the package be returned to him, and Houston told

him that he needed his cousin's telephone number to call and verify the information.[10]  Ayara

refused to give any information, but told Houston that he would have his cousin call him.[11]

Approximately ten minutes later, Houston received a telephone call about the same

package from a man who identified himself as "Ab Akins."[12]  Houston told "Akins" that the

package was being held by the Overgoods Department of Fed Ex and that he needed to verify the

contents.[13]  After giving Houston the correct shipping label, Akins stated that the package

contained a Rolex watch, a cell phone, two necklaces, and approximately $ 12,000.00 in cash.[14]

Houston then asked "Akins" for a telephone number at which he could be contacted.[15]

According to Houston, "Akins" grew defensive and argumentative and asked why Houston

needed the information.[16]  He refused to give Houston any further information and asked why he

_____

Ayara Olamigoke as a reference to Olamigoke Ayara.

[8] *Id*. at ¶ 5(a).

[9] *Id*.  Ayara asserts that he did not tell Agent Houston about the money because he was unaware of the situation and the reason why the package was being held.  Ayara Aff. ¶ 8.

[10] Cotten Aff. ¶ 5(a).

[11] *Id*.

[12] *Id*. at ¶ 5(b).

[13] *Id*.

[14] *Id*.

[15] *Id*. at ¶ 5(c).

[16] *Id*.

did not send the package back.[17]  Houston asked "Akins" why he was sending so much cash, and "Akins" said that his cousin needed to buy a car in Africa.[18]  Houston told "Akins" that he needed the personal information in order to recreate the shipping label and send the package back because the original label had come off the package; however, "Akins" still refused to provide any of the personal information Houston requested.[19]

On December 18, 2008, Task Force Officer Hawks placed a call to the telephone number given for the sender of the seized package containing the $11,900.00 in currency, (xxx)xxx-0985, and spoke with a male individual who identified himself as Ab Akins.[20]  TFO Hawks told "Akins" that his package was being held at the Fed Ex Overgoods Department because the air bill was illegible.[21]  TFO Hawks asked "Akins" to identify the contents of the package, and "Akins" said that it included approximately $ 12,000.00 in cash, a Rolex watch, and two necklaces.[22]  TFO Hawks asked "Akins" why he was sending so much cash, and "Akins" stated

---

[17] *Id.*

[18] *Id.*

[19] *Id.*  According to Houston, "Akins" then asked him about a second package that he had sent, but which had never arrived at its destination.  *Id.* at ¶ 5(d).  "Akins" provided the shipping label number, and said that it contained a cashier's check for $5,000.00.  *Id.*  Houston told "Akins" that he needed some personal information in order to send the package back.  *Id.* "Akins" told Houston that he would call him back, but he never did.  *Id.*  In actuality, the second package had also been seized by Fed Ex in Indianapolis because it was believed to be fraudulent, and had been forwarded to Fed Ex's Fraud Department in Memphis for investigation.  *Id.*

[20] *Id.* at ¶ 6.

[21] *Id.*

[22] *Id.*

that he was sending it to Olamigoke Ayara to buy a car in Africa.[23]  When asked about the jewelry, "Akins" said that someone he did not know had given him the package of jewelry to ship to Ayara, and that Ayara had left for Africa on December 11, 2008.[24]  TFO Hawks asked "Akins" for some personal information, and he responded that his full name was Abiodun Akinpelade and provided an address in Indianapolis, a date of birth, Social Security number, and Indiana driver's license number.[25]

On December 22, 2008, TFO Joe Hoing placed a call to (xxx) xxx-0985 to verify the tracking number on the package containing the currency, and spoke with an individual who identified himself as Abiodun Akinpelade.[26]  Akinpelade told TFO Hoing that he had shipped approximately $ 12,000.00 in U.S. currency, one Rolex watch, and two necklaces that were to be sent to Africa.[27]  He further stated that he was sending the package to his cousin in Baltimore, Maryland, and that the currency was to be used as a car payment.[28]  TFO Hoing then asked Akinpelade for his cousin's telephone number, which Akinpelade refused to provide.[29] Akinpelade told TFO Hoing that his cousin had left the country and was in Africa, but he would

---

[23] *Id*.

[24] *Id*.  Ayara contends that he left for Nigeria on December 15, 2008.  Ayara Aff. ¶ 10.

[25] Cotten Aff. ¶ 7.

[26] *Id*. at ¶ 8.

[27] *Id*.

[28] *Id*. at ¶ 8.  Akinpelade also allegedly told TFO Hoing that the currency was originally the proceeds of a car that had been sold in Africa and that it had been given to a friend, whose name he did not know, who was going to Canada.  *Id*.  He also said that his friend brought the money to Canada so that he could send it to his cousin.  *Id*.

[29] *Id*.

contact his cousin and have him call him.[30]

Later that day, TFO Hoing received a telephone call from xxxxxxx3854, an international number.[31]  The caller identified himself as Olamigoke Ayara, and he maintained that the currency was to be used to purchase a car in Africa.[32]  TFO Hoing asked Ayara for some personal information, and Ayara provided an address in Wichita, Kansas, a date of birth, a Kansas driver's license number, and a Social Security number.[33]  He also said that he was the owner of Roakis Motors, and provided an address and telephone number for his business in Washington, D.C.[34]

On that same day, TFO Hoing detailed his trained narcotics dog "Tex" on the Fed Ex packaging from which the currency had been seized as well as the envelope that had contained the currency.[35]  "Tex," who is trained to detect the odor of marijuana, cocaine, heroin, and methamphetamine, gave a positive alert on both the package and envelope for the odor of narcotics.[36]

On February 18, 2009, the DEA Forfeiture Counsel allegedly received a claim to the

---

[30] *Id.*

[31] *Id.* at ¶ 9.

[32] *Id.*

[33] *Id.*

[34] *Id.*  A subsequent check with the Kansas Department of Motor Vehicles revealed that no such driver's license had been issued for the name and driver's license number provided by Ayara.  *Id.*  The Court notes, however, that Ayara has attached what appears to be a copy of a Kansas driver's license to his Answer to the Complaint.

[35] *Id.* at ¶ 10.

[36] *Id.*

defendant $11,900.00 in U.S. currency.[37]  This claim was not made in any of the names

discussed above but rather in Ayana Adegoke.[38]  However, Adegoke asserted that the currency

was to be used to purchase a particular vehicle from an automobile auction in Manheim,

Pennsylvania and then shipped to Nigeria in Africa.[39]

 For his part, Claimant Ayara disputes Plaintiff's recitation of the facts.  Ayara contends

that he purchased a 2006 Ford Explorer at the Manheim Auto Auction in Manheim,

Pennsylvania on October 3, 2008.[40]  The purchase price was Fourteen Thousand Six Hundred

and Forty-Five Dollars ($14,645.00).[41]  On or about December 10, 2008, Ayara asked Abidoun

Akinpelade, the nephew of the person purchasing the vehicle, to forward the remaining payment

in the amount of Eleven Thousand Nine Hundred Dollars ($11,900.00).[42]

 Ayara allegedly wanted Akinpelade to directly deposit the remaining balance into his

bank account.[43]  However, Ayara's bank did not have a branch in Akinpelade's area, so Ayara

instructed him to ship the money via Fed Ex.[44]  On or about December 14, 2008, when the Fed

Ex package did not arrive, Ayara called Fed Ex to determine what had happened to his

---

[37] *Id*. at ¶ 11.

[38] *Id*.

[39] *Id*.

[40] Ayara Aff. ¶ 2.

[41] *Id*.

[42] *Id*. at ¶ 3.  Mr. Rotunde was the alleged ultimate purchaser of the Ford Explorer.  Resp. to Pl.'s Mot. to Strike, 3.

[43] Ayara Aff. at ¶ 4.

[44] *Id*. at ¶ 4.

package.[45]  The same day, Ayara went to a Fed Ex location near the BWI airport and was told that his package had been sent back to Indiana.[46]

On his way home, Ayara called the Indiana Fed Ex office, and he was transferred to Agent Houston.[47]  Agent Houston informed him that the package was being held for further investigation.[48]  Agent Houston asked Ayara to verify his identity and the contents of the package.[49]  After talking to Houston, Ayara called Akinpelade and instructed him to go to Fed Ex and figure out what the problem was with the package.[50]

On December 22, 2008, Ayara called the agent from Nigeria about his package.[51]  He informed the agent he spoke with that the $11,900.00 was payment for a vehicle that had already been shipped to Nigeria.[52]  On February 2, 2009, Ayara received notice from the U.S. Drug Enforcement Administration that his package had been seized.[53]

In the present Motion, Plaintiff asks this Court to strike Ayara's claim and answer for

---

[45] *Id*. at ¶ 5.

[46] *Id*. at ¶ 6.

[47] *Id*. at ¶ 7.

[48] *Id*. at ¶ 8.

[49] *Id*.

[50] *Id*. at 10.

[51] *Id*. at ¶11.  Akinpelade gave Ayara the number on December 18, 2008.  *Id*.

[52] *Id*.

[53] *Id*. at ¶ 12.

lack of Article III standing.[54]  Plaintiff contends that, at best, Ayara was an unsecured creditor and therefore has no interest in the specific property to be forfeited.[55]  Ayara, however, contends that he has Article III standing since he was the owner of the currency seized.[56]

## ANALYSIS

In a civil forfeiture action, the claimant to the defendant property must have standing in order to challenge the forfeiture action.[57]  To contest a governmental forfeiture action, claimants must have both standing under the statute or statutes governing their claims and standing under Article III of the Constitution as required for any action brought in federal court.[58]  The Supplemental Rules for Certain Admiralty and Maritime Claims govern this civil forfeiture action.[59]  Here, the Plaintiff does not dispute that the Claimant has statutory standing as he has complied with Supp. R. G(5).[60]  Plaintiff does, however, contend that Claimant, Olamigoke Ayara, lacks Article III standing.

---

[54] Pl.'s Mot. to Strike, ¶¶ 1-2.  Pursuant to Supp. R. G(8)(c), the government may move to strike an answer or claim at any time for lack of standing.

[55] *Id*. at ¶ 2.

[56] Resp. to Pl.'s Mot. to Strike, 3.

[57] *United States v. $ 515,060.42*, 152 F.3d 491, 497 (6th Cir. 1998).

[58] *Id*.

[59] *United States v. Any and All Radio Station Transmission Equipment et. al*, 218 F.3d 543, 550 (6th Cir. 2000).

[60] Supp. R. G(5)(a)(i)(A)-(D) states "[a] person who asserts an interest in the defendant property may contest the forfeiture by filing a claim in the court where the action is pending. The claim must: (A) identify the property claimed; (B) identify the claimant and state the claimant's interest in the property; (C) be signed by the claimant under penalty of perjury; and (D) be served on the government attorney designated under Rule G(4)(a)(ii)(C) or (b)(ii)(D)."  Ayara styled his "claim" as an "answer;" however, he met all of the requirements of Supp. R. G(5).

To establish Article III standing, the claimant must have a colorable ownership, possessory, or security interest in at least a portion of the defendant property.[61]  Article III's standing requirement is thereby satisfied because an owner or possessor of property that has been seized necessarily suffers an injury that can be redressed at least in part by the return of the seized property.[62]  A claimant need not prove the merits of his underlying claim, but he must claim a facially colorable interest in the seized property.[63]  Colorable claims which confer standing include the most obvious type of interest in seized property, an ownership interest.[64]  A property interest less than ownership may also be sufficient to create standing.[65]

Here, the Plaintiff contends that Ayara lacks Article III standing since he is, at best, an unsecured creditor of Akinpelade's uncle, the ultimate purchaser of the vehicle.  The Claimant, however, contends that a copy of what appears to be a purchase slip for a Ford Explorer proves that he is the owner of the $11,900.00 that was seized.[66]  The Claimant seems to suggest that since Roakis Motors, Inc., Claimant's company, purchased a Ford Explorer on October 2, 2008, he had a security interest in the vehicle at issue.  Thus, he asserts he is the owner of the $11,900.00.  Claimant, however, does not proffer any additional evidence to support this suggestion nor does he provide any documentation indicating that he personally purchased the

---

[61] *$515,060.42*, 152 F.3d at 497.

[62] *Id.*

[63] *Id.*

[64] *Id.*

[65] *Id.*

[66] *See* Exhibit A to Resp. to Pl.'s Mot. to Strike.  The document does not have a title.

vehicle from Roakis Motors, Inc. and sold it to Akinpelade's uncle.

Standing is the "threshold question in every federal case, determining the power of the court to entertain the suit."[67]  It is well settled that a claimant must demonstrate an "ownership or possessory interest in the property seized" to establish standing under Article III to contest a civil forfeiture of seized property.[68]  Furthermore, federal courts have consistently held that unsecured creditors do not have standing to challenge the civil forfeiture of their debtors' property.[69]

Even assuming the Claimant was the owner of the Ford Explorer and not Roakis Motors, he has failed to proffer any evidence to suggest that he is anything more than an unsecured creditor of Akinpelade's uncle.  For instance, Plaintiff has not provided this Court with any evidence indicating he is a secured creditor such as a financing statement.  Since Claimant at best is an unsecured creditor, he has no interest in or legal right to the defendant property itself and thus lacks Article III standing.  Therefore, Claimant's Claim and Answer must be stricken.

Furthermore, Claimant has failed to even demonstrate that he has an ownership or possessory interest in the defendant property.  Claimant asserts that he is the owner of the defendant property since the Fed Ex package was addressed to him.  Claimant, however, was never in actual possession of the currency, and therefore, at most had a possessory interest in the $11,900.00.  To the extent that he might have had an expected possessory interest in the currency as the recipient of the package, that is not sufficient to establish even a constructive possessory

---

[67] *Warth v. Seldin*, 422 U.S. 490, 499 (1975).

[68] *See $ 515,060.42*, 152 F.3d at 497.

[69] *United States v. $ 20,193.39 United States Currency*, 16 F.3d 344, 346 (9th Cir. 1994).

interest in the property as it rested in Indiana; whereas, Claimant was in Maryland.[70]  The

currency at that point was in transit and still belonged to the sender, Akinpelade.[71]  Therefore,

Claimant has failed to even proffer evidence demonstrating his ownership or possessory interest

in the defendant property.

## CONCLUSION

Because the Claimant lacks Article III standing, the Plaintiff's Motion to Strike is

**GRANTED**.

      **IT IS SO ORDERED**.

      **s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

DATE: October 26th, 2009

---

[70] *See generally United States v. $960,000 in U.S. Currency*, No. 05-12673, 2006 WL 3369525, at *4-5 (11th Cir. 2006). (recipient of package did not have ownership or possessory interest in contents when package was seized in Miami, and he was located in Columbia).

[71] *Id*. at *5.